ALLAN AND GLORIA MOLASKY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Molasky v. Commissioner
Docket No. 473-86
United States Tax Court
T.C. Memo 1992-164; 1992 Tax Ct. Memo LEXIS 176; 63 T.C.M. (CCH) 2472; March 23, 1992, Filed *176 Decision will be entered under Rule 155. Howard A. Wittner and Jane M. Carriker, for petitioners. Robert J. Burbank, for respondent. FAY
FAY
SUPPLEMENTAL MEMORANDUM OPINION FAY, Judge: This matter is before this Court on remand by the Court of Appeals for the Eighth Circuit. The sole issue for decision is to what extent petitioner Allan Molasky (petitioner) should recognize income in 1981 under section 61(a) [1] for payments allocated to a covenant not to compete in connection with a sale of a distributorship. On April 25, 1988, this Court issued its opinion, , affd. in part and revd. in part , in which we held that, of the $ 354,200 allocated to and paid for the covenant binding three covenantors, *177 $ 324,000 was attributable to petitioner's covenant and was, accordingly, taxable to petitioner. On February 27, 1990, the Eighth Circuit reversed this Court's opinion solely with regard to the allocation of the $ 354,200 among the covenantors and affirmed all the remaining issues decided in the opinion. [2]
*178 Beginning in the 1950s, petitioner's father operated the New Orleans area distributorship for a horse racing publication known as the Daily Racing Form (Racing Form). [3] Racing Form is a national publication which is published by an unrelated third party, Daily Racing Form, Inc. (publisher). Racing Form provides individuals who bet on horses racing at racetracks around the country with pertinent information regarding the past performances of jockeys and horses, including a handicapper's predictions as to outcomes of particular horse races in each locality. In 1960, petitioner took over the business and, until 1981, operated the distributorship through a variety of corporate forms, most of which went bankrupt. In 1980, a regional distribution business called Anderson News Co. (ANCO) expressed an interest in purchasing the distributorship, and petitioner agreed to sell. *179 At the time of the sale, the distributorship operated under the name of Racing Services, Inc. (Racing Services). Although petitioner's daughter, Marti Ellen Rose, technically owned Racing Services, petitioner personally guaranteed its corporate debts and managed its daily affairs. [4] Petitioner also wrote numerous checks for personal expenses from the corporation's account. Racing Services was a subsidiary corporation of Melanjo Investments, Inc., of which petitioner was president. After substantial negotiation, the parties reached an agreement *180 for ANCO to purchase the distributorship and its assets for $ 369,700. The first section of the sales agreement allocated $ 15,000 of the purchase price to tangible assets and $ 500 to goodwill. Section 2 of the agreement allocated the remaining $ 354,200 to a covenant which read, in relevant part, as follows: 2. Covenant Not to Compete 2.1 The Company and the Molaskys, jointly and severally, covenant and agree that for the period from the closing date to December 31, 1982 they will not, directly or indirectly, either as principal, broker, agent, stockholder (owning 5% or more of the outstanding stock of any class), or as a partner, officer, director, trustee, employee, consultant or member of a board of directors or board of trustees of any person, firm or corporation, or otherwise, or in any other capacity, engage in, have a financial interest in, as lender or guarantor or otherwise, or carry on any business which is engaged in, the wholesale sale or distribution of the Daily Racing Form within the geographical area of which has a radius of 30 miles from the center of the city of New Orleans, except as consultant to or employee of the Buyer. The Company and the Molaskys *181 agree that any breach by them, or by any of them, of this covenant shall entitle the Buyer, in addition to any other remedies available to it, to apply to any court of competent jurisdiction to enjoin such breach. 2.2 In consideration of the Company's and the Molaskys' covenant not to compete, as provided above, the Buyer agrees to pay to them at the closing hereunder the sum of $ 354,200 reduced by the amount owed by the Company to the publisher of the Daily Racing Form on the Effective Date, which Buyer agrees to assume and pay.
An attorney represented ANCO during the sales negotiations, while petitioner bargained either on his own or assisted by his son, Mark Molasky, a businessman. In negotiations, petitioner informed ANCO representatives that the amount of the purchase price allocated to the covenant made no difference to him so long as the check went to Racing Services. On February 3, 1981, pursuant to the sales agreement, ANCO deposited $ 250,122.98 into Racing Services' bank account and wired the publisher of Racing Form a payment of $ 129,777.08 to satisfy Racing Services' corporate obligations. [5] Thereafter, ANCO deducted the amount allocated to the covenant from *182 its corporate tax returns. When the Internal Revenue Service (IRS) conducted an audit during 1983-84, neither petitioner, Mark Molasky, nor Racing Services had reported the amounts received pursuant to the covenant. In response to the audit, petitioner filed a belated return which reported the entire $ 354,200 as income to Melanjo Investments, Inc., which had substantial (i.e., totally offsetting) losses. Respondent disagreed with this allocation, and the IRS charged the entire $ 354,200 to petitioners as income. Respondent also issued an alternative notice of deficiency to Mark Molasky for the same amount ($ 354,200). Petitioners subsequently contested respondent's determination in this Court, [6] contending that the entire $ 354,200 allocated to the covenant in actuality represented a payment for goodwill. Following a trial, this Court upheld respondent's position but reduced the amount taxable to *183 petitioners from $ 354,200 to $ 324,000, noting that petitioner was the covenant's primary, but not singular, target. [7]
On appeal, the Eighth Circuit directed this Court to allocate, at a minimum, $ 129,777.08 of the total $ 354,200 paid as consideration for the covenant to Racing Services. The reason for this directive was that the sales agreement, by its language, provided that a portion of the noncompetition provision would be applied directly to Racing Services' debt to the publisher of Racing Form. At the time of the sale, Racing Services owed the publisher $ 129,777.08. Therefore, this debt paid directly *184 by ANCO to the publisher on behalf of Racing Services is properly allocated to Racing Services. We now proceed to allocate the remaining $ 224,422.92. [8]
The covenant at issue prevented petitioner, Mark Molasky, and Racing Services from competing with ANCO for approximately 2 years within the geographical area extending 30 miles from the center of the City of New Orleans. At the time the covenant was entered into, ANCO considered potential competition from petitioner to be a much more significant threat than potential *185 competition from Mark Molasky or Racing Services. The following excerpt from the direct examination of the president and part owner of ANCO, who participated in the covenant negotiations, clearly illustrates this point. Q At the time that the covenant was entered into, did you consider potential competition from Allan Molasky [petitioner] to be a significant problem which you needed to deal with? A Yes, sir. Q And at that time, did you consider that Mark Molasky, acting on his own, would be a competitive threat to you with regard to the distributorship? A We saw the potential there, but to a much lesser degree. * * * Q * * * Did you consider a covenant not to compete solely from Racing Services Corporation? A Oh, no, no, no. Q Why not? A Well, that would not have given us the assurances that we needed. In the wholesale distribution businesses, publishers even though the invoices and statements are made out to companies, corporations, and the checks are made from corporations, payable to the publishers, the publishers in reality could additionally do business with people. The corporation is in here, because we thought that it should have been in here, and that was an *186 important part of it, but the real threat, if there was, in fact, any threat, was from the individuals.
It was also ANCO's understanding that it was petitioner who was actively involved in the distribution of Racing Form while Mark Molasky was not so involved but, rather, was involved in the distribution of magazines to retail bookstores. In addition, Mark Molasky was perceived by ANCO as a poor businessman. Therefore, we find that only a very small amount of the total paid by ANCO as consideration for the covenant was attributable to potential competition from Mark Molasky. The potential for competition from Racing Services, as an entity, was even less significant than the potential competition perceived by ANCO from Mark Molasky. The testimony at trial indicates that ANCO essentially feared competition from the individuals who controlled Racing Services, not Racing Services itself. Thus, we decline to allocate any more of the remaining unallocated covenant purchase price ($ 224,422.92) to Racing Services than what was allocated by the Eighth Circuit pursuant to the discharge of Racing Services' debt to the publisher by ANCO ($ 129,777.08). In sum, we find that a covenant *187 not to compete from Racing Services, Mark Molasky, or both, exclusive of petitioner, would have been of minimal value to ANCO. Accordingly, we find that of the $ 224,422.92 remaining to be allocated among the covenantors, $ 194,222.92 is properly allocated to petitioner. [9]
Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. In , affg. in part and revg. in part , the court held: We affirm the tax court's decision as to the allocation of $ 354,200 to the noncompetition provision and the refusal to use the income averaging method of computation. We must reverse insofar as the decision attributes $ 324,000 from the noncompetition provision to Allan Molasky, however, because in our view at least $ 129,777.08 of the provision comprised consideration to Racing Services. Accordingly, we remand for a determination of what portion of the remaining $ 224,422.92 should be allocated to Allan Molasky. Finally, we refuse to consider the improperly preserved contention that Gloria Molasky is an innocent spouse.↩
3. The following background summary is essentially that made by the Eighth Circuit Court of Appeals at .↩
4. The Molasky family organized Racing Services, a closely held corporation, after petitioner's previous distributorship filed for bankruptcy in 1976. Shortly thereafter, the publisher of Racing Form refused to do business with Racing Services without personal guarantees. While petitioner gave such a guarantee, his daughter, Racing Services' sole shareholder, refused to. In addition, petitioner's daughter took no part in the later negotiations for the corporation's sale.↩
5. For an unknown reason, those two checks exceed the amount ANCO owed under the sales agreement by $ 10,200.06.↩
6. Mark Molasky was not a party to this proceeding. ↩
7. Petitioners argued that the entire $ 354,200 allocated to the covenant was actually paid for goodwill and, as such, not taxable to petitioners. We, however, did not address the issue of whether petitioners would have been taxed on any payments reallocated to goodwill if they had been successful in proving such reallocation for Federal tax purposes.↩
8. On September 23, 1991, petitioner filed a Motion for a New Hearing on Remand. On October 7, 1991, respondent filed a Notice of Objection to petitioner's motion. On February 3, 1992, this Court denied petitioner's motion because the allocation issue currently before this Court was one of the issues tried at the initial trial of this case. Thus, we proceed to decide the issue of the allocation of the payment for the covenant based on the original record and additional briefs submitted by the parties.↩
9. Consistent with our Memorandum Findings of Fact and Opinion in , we find that the remaining $ 30,200 is not properly attributable to petitioner. Instead, we find that the $ 30,200 is properly allocable to Mark Molasky.↩